## SCOPE OF EMPLOYMENT PROTECTED BY EMPLOYERS' LIABILITY INSURANCE.

[Circuit Court of Lucas County.]

THE TRAVELLERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, v. WILLIAM W. BRIGHT.

Decided, February 25, 1903.

*Insurance—Employers' Liability Covering Building Contractors—Nature of Work Included—Construction of Insurance Contract.*

1. A contract of employers' liability insurance should be resolved rather in favor of the insured than strictly against him.
2. A laborer in the employ of B., a contracting carpenter, painter and plasterer, was killed while at work at the top of a hoist used for raising to the upper stories material to go into the construction of the building, and operated jointly by B. and H., who was the contracting brick layer on the same building. *Held:* That the decedent was at the time of his death in the employ of B., and not of B. & H., and that a contract of employers' liability insurance undertaking to protect B. from liability for injury to any employe while on duty "at the places and in the occupations mentioned in the application" covered the accident to this man at the top of the hoist, and the insurance company is liable thereunder.

HAYNES, J.; PARKER, J., and HULL, J., concur.

In this case a judgment was rendered in the court of common pleas against the insurance company on certain matters set out in the petition. The controversy grew out of insurance which had been effected by Bright against loss on account of bodily injury to certain men who were in Bright's employ. The policies of insurance, in the main cause, provided as follows:

"The company does hereby agree to indemnify William W. Bright, of Toledo, county of Lucas, state of Ohio (hereinafter called "the assured"), for the period of twelve months, beginning on the 4th day of June, 1900, at noon, and ending on the 4th day of June, 1901, at noon, standard time, at the place where this policy has been countersigned, against loss from common law or statutory liability, for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered within the period of this policy by any employe or employes of the assured while on duty

at the places and in the occupation mentioned in said application, in and during the continuance of the work described in the said application, subject to the following agreements, which are to be construed as conditions."

Bright, in his petition, avers that having taken out this policy, he proceeded to do certain work in the city of Toledo, and, while carrying forward that work, one of his men was injured—in fact, the man was killed; that an action was brought against him by the administrator; that upon said suit being brought he notified the Travellers Insurance Company, as required by the terms of the policy of insurance, of the fact and required them to defend; that they replied that the loss did not come within the provisions of the policy, that they were not liable and therefore did not defend. Bright proceeded to make defense to the suit, and that such proceedings were had in the case that judgment was rendered against him for the sum of fifteen hundred dollars—which was afterwards compromised for a less amount—and thereupon he brought suit against the insurance company, to compel them to pay the amount under the terms of their policy.

The insurance company answered to that petition, as they had answered before, that the person who was killed was not working at the time in a position that brought him within the terms of the policy—in short, that there was no liabilty on their part for the death of the party, or to indemnify Bright for the damages which he had suffered by reason of said death.

A reference is made in the policy to the application, which is made a part of the policy and is the real basis of it. It appears from the testimony, that Bright had taken a contract to put up three additional stories upon a large brick building at the corner of Summit and Adams street in this city, which formerly belonged to the Bronson estate and then belonged to one of the Bronson heirs. He took the contract for doing the whole of the work, and then sub-let the mason work to another party, and the roofing and steel work to another party, he himself retaining and undertaking to do that which naturally came within the limits of a carpenter's contract and the painting and plastering. He had already sub-let the brick-work when his attention was called to the matter of this insurance. An agent of the insurance company called upon him

and the matter was discussed and resulted in an application being drawn up by the agent at the time and signed by Bright—the application being, of course, upon questions propounded by the agent and answers made by Mr. Bright. The matter that seemed to be in the minds of the parties was that it was to insure against accident which might result upon that building although the application was general in its terms for the period of one year and to cover wherever the party should have work to do in Ohio, and no mention is made, so far as we can discover, of the building in question. Nevertheless, the policy was taken out at that time with reference to that building and with some understanding as between the agent and the contractor of the work which was there to be done. The building was already a three-story one and the additional stories would carry it up to six or seven stories in height. The application reads as follows:

The undersigned hereby applies for a Contractors' Employers Liability Policy based upon the following statements of fact which are warranted to be true, and it is hereby agreed that if the applicant shall fail to comply with the requirements of any statute, by-law, or ordinance respecting the safety of persons, the policy shall not cover injuries resulting from such failure.

Name of employer, Wm. W. Bright.

Address of employer, 2039 Adams street, Toledo, Lucas county, Ohio.

Trade or business is contracting carpenter, painter and plasterer.

The "contracting carpenter" we understand to mean taking contracts for carpenter's work or business. The point that was made was after the word "carpenter."

The occupations of employes, the average number in each occupation, and the estimated total annual wages by occupations are given in the following lists:

THE EMPLOYES.

| Description of Occupation. | Estimated Average Number. | Estimated Total Annual Wages. | Place Where Work Is to Be Done. | REMARKS. |
|---|---|---|---|---|
| Foremen | 2 | $500 each | Wherever I | These men do |
| Carpenters | 12 | $450 each | have work | not work all |
| Laborers | 2 | $300 each | to do — Ohio | the year |
| Plasterers | 2 | $ 21 per wk. each | and adjoining | |
| Painters | 2 | $450 per yr. each | states. | |
| Hod carriers | 1 | $350 per yr. each | | |

The operations are those usual to the trade or kind of business described above, except as follows:

None but the customary.

No power is used, except as follows: Steam for hoist.

It further appears from the facts of the case, that at the time the contract was let for the brick-work there were some negotiations

had between Hartman, who took that portion of the contract, and Bright in regard to the hoisting business, the taking up of the brick and the taking up of the necessary articles for the department that Bright was to carry forward, and there was some discussion whether Bright could get an engine, or whether the engine that Hartman had was sufficient or not, and this resulted in an arrangement between them whereby they rented an engine and hired an engineer, each to pay a man at the top to help manage matters up there, Bright owning the derrick or hoisting arrangement and the tackle and ropes were bought with the expectation that Bright was to pay for them—but, as a matter of fact, Hartman took them and paid for them, as he wanted to use them in another place. There was some question made as to whether that arrangement was all completed before this policy was completed and was understood by Mr. Hunker at that time; but Bright seems to have come to the conclusion that it was finally concluded before the application was signed by him; it does not perhaps appear that Hunker understood or knew much about that part of it. The parties went to work under those conditions. It turned out—and I suppose the jury found—that the hoisting works were insecurely fastened at the top of the building, and while they were carrying on the work the hoisting apparatus gave way, and in falling carried the party who was killed to the ground. Now it happened that the articles which were being carried up at the time the apparatus fell were brick which were to be used by Hartman. There was some claim that the box in which they were placed was overloaded—that the load was too heavy; and it was stated by Bright that they were at least of full weight and perhaps a trifle more; that there were not more brick in but that the brick had become water-soaked by rain, and perhaps had been sprinkled, but they weighed a little heavier and would weigh perhaps 1800 pounds and the average weight would be about 1600 to 1700 pounds.

There is no question but what Binecka, the man who was killed, was hired by Bright. He was a laborer in his employ and had been with him for some time, perhaps a year, working in various departments of the business. When they went to work upon this building he was at work there, but had not been connected with the work about the hoisting apparatus until perhaps the day that he

was killed. At any rate, on that day the man who had been attending to that work failed to appear. The accident occurred on the 5th of July. Mr. Bright, it seems, asked Binecka if he was willing to do that work, and he said he was willing and undertook it.

Under this state of facts, the insurance company claim that they are not liable, for the reason that the party who was killed was not, at the time he was killed, engaged in a work that brought him within the terms of the policy of insurance; in other words, that he was not at that time a laborer working in that department, in the carpenter business, or plastering, or painting, but that in truth and in fact, if he were working for Hartman, he was working in the department of mason work.

The question involved in this case is one by no means free from difficulty, as we found in discussing it, and we simply have to discuss these contracts and the facts of the case and arrive at a conclusion, because we do not know that there are any cases likely to help us. In a case of this kind, where there is any doubt in regard to the terms of the contract, we think they should be resolved rather in favor of the assured than to be strictly resolved against them. The question here is: Whether within the terms of this contract, the policy of insurance should be held to cover the damage which has been sustained by reason of the death of this man? Now, this man was hired by Bright; he was hired as a laborer— the testimony seemed to show that, without any variation. He was paid the wages of a laborer in the employ of Bright and he contined to work there until on this 5th of July when he went to this place and was put to work on the hoisting apparatus at the request of Bright and by his direction, and took his position there as the employe of Bright and was, of course, subject to his control. The work which was being carried on was that they would raise some material for Hartman and some material for Bright, and so it went on alternately, as the demands of the work on the building called for. The man opposite to him and working on the other side was an employe of Hartman—sent there by Hartman and was paid by Hartman.

It was claimed that by virtue of this arrangement between Hartman and Bright, that they formed as it were a new partnership,

and that this man·when he was sent there to work at this point went into the employ, not of Bright alone, but into the employ of Bright & Hartman, and that he was carrying forward a more hazardous business. He was not carrying forward the carpenter business, nor the painting business, nor the plastering business, at least not exclusively, but he was doing more; he was doing that and at the same time carrying on the mason business in that he was raising brick for the use of the masons. The case has been very fully and ably argued and many suggestions in regard to the character assumed by this party in taking the position that he occupied in relation to the business and the work to be done, and it was argued that he was really an employe of a new firm, as we have stated, of Bright & Hartman; that no matter if Bright paid him, that the moment he went to work in that way he became the employe, for the time being, of Bright & Hartman, and that in case anything occurred by reason of his negligence, Hartman would be liable as much as Bright.

The question is difficult, and we are compelled to decide it upon a fair and liberal construction of the contract, having regard to how the work was being done and the object and purpose for which the contract was made. We think that in carrying on this work he was doing what was contemplated at the time this paper was signed—that is to say, the materials were being hoisted by the steam hoisting apparatus, and that the employes of Mr. Bright would be engaged in and about that business; it was a part of the work which was being carried on; it was within the carpenter work of Bright at least that all his materials should be carried up and his plastering and carpenter work by a hoisting apparatus of that kind. Now, did he forfeit his right to protection under the policy by the fact that under this arrangement which he had made for convenience and economy, they were engaged in hoisting up some material also for Hartman and that they joined together in paying for the running of the engine and in paying the engineer his wages? It seems to us not. It seems to us that this man was, while in this employ, fairly and justly within the terms of this policy issued to Bright, and that any accident that occurred to him in and about this work at that point and at the time and place where he was when he was killed was fairly and justly within

the terms of the policy, and is one that was within the fair con-templation of the parties to be covered at the time the contract was made.

We, therefore, hold that the judgment of the court of common pleas in this matter was correct; and the judgment of that court will be affirmed, but withc it penalty.

*Doyle & Lewis,* for plaintiff in error.

*A. L. Smith, D. L. Beall* and *Charles E. Longwell,* for defendant in error.